IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALI WARIS,                        §
                                  §
        Plaintiff,                §
                                  §
v.                                §        Civil Action No. H-06-1331
                                  §
HARRIS COUNTY, TEXAS, et al.,     §
                                  §
        Defendants.               §

**<u>MEMORANDUM AND RECOMMENDATION</u>**

Presently pending before the court are Defendants' Motion for
Summary Judgment (Docket Entry No. 58) and Plaintiff's Motion for
Summary Judgment (Docket Entry No. 74) and the responses filed
thereto.   For the reasons set forth below, the court **RECOMMENDS**
that Defendants' summary judgment motion be **GRANTED** and that
Plaintiff's summary judgment motion be **DENIED**.

## I.  Case Background

Plaintiff, of Asian-Indian descent and proceeding pro se,
filed this action against his former employer, Harris County Public
Health & Environmental Services ("HCPHES" or "Harris County"), two
supervisors, Dr. Umair Shah ("Dr. Shah") and Dr. Herminia Palacio
("Dr. Palacio"), and a human resources manager, Charles Cunningham
("Cunningham"), claiming race/national origin discrimination in
violation of Title VII of the Civil Rights Act of 1964 ("Title
VII")[1] and the Texas Commission on Human Rights Act ("TCHRA"),[2]

---

[1]     42 U.S.C. §§ 2000e-5.

[2]     Tex. Lab. Code §§ 21.001-.556.

conspiracy to violate his civil rights in violation of 42 U.S.C. § 1985(3), race discrimination in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"),[3] violation of his First Amendment right to free speech, violation of his Fourteenth Amendment rights to procedural and substantive due process, violation of his Fourteenth Amendment liberty interest in his reputation and, under state law, breach of contract, tortious interference with employment relations and defamation.[4]

On June 28, 2005, Plaintiff was hired by Defendant Harris County as clinic manager for its Humble Clinic.[5]  In that position he supervised approximately fifteen employees, mostly women.[6] Plaintiff was supervised by Binh Nguyen ("Nguyen"), health service area manager.[7]  Nguyen reported to Dr. Shah, deputy director of the HCPHES.[8]  Dr. Shah reported to Dr. Palacio, executive director of the HCPHES.  Plaintiff was terminated from his employment on August 16, 2005, seven weeks after he began work, based on complaints by a number of his subordinates about his condescending attitude and

---

[3]   42 U.S.C. § 2000d.

[4]   See Plaintiff's Amended Complaint, Docket Entry No. 6.

[5]   Id. at ¶ 22.

[6]   Defendants' Motion for Summary Judgment (Docket entry No. 58)("DMSJ"), Ex. D, Affidavit of Dr. Umair Shah, p. 1.

[7]   Id.

[8]   Id.

verbal attacks.[9]

According to Plaintiff, the Humble Clinic was in "very poor shape" when he arrived in June 2005.[10]  In response, he implemented a time-in/time-out sheet for employees, insisted that supervisors perform annual evaluations of their staff members, attempted to evaluate the length of waiting time for clients, complained that Spanish-speaking employees were frequently called away from their duties to translate for clients, and obtained price quotes for storage units to address space concerns.[11]  In addition, Plaintiff began having personnel issues with employees at the clinic.

On July 12, 2005, Plaintiff notified Nguyen via e-mail that he was having a problem with Ginger Trejo ("Trejo"), a nurse practitioner at the clinic.[12]  Three days later, Plaintiff sent a second e-mail to Nguyen, documenting additional problems with Trejo and reporting her statements that she was not sure if the job was the right one for her and that she was going to take Friday off to evaluate the situation.  Plaintiff concluded that he thought Trejo was "going through some psychological condition which, frankly,

---

[9]    Id. at p. 3.

[10]    Plaintiff's  Motion  for  Summary  Judgment  (Docket  Entry  No. 74)("PMSJ"), p. 9.

[11]    See PMSJ, p. 12; PMSJ, Ex. 11, e-mail from Plaintiff to Nguyen dated July 4, 2005.

[12]    PMSJ, Ex. 31, e-mail from Plaintiff to Nguyen dated July 12, 2005.

concerns me from a patient care point of view."[13]  Nguyen responded

that Plaintiff could not post her position until Trejo resigned and

reminded Plaintiff that any termination must be approved through

the proper channels.[14]

On  July  18,  2005,  Jan  Allison  ("Allison"),  volunteer

coordinator for HCPHES human resources department, sent Cunningham

a memo detailing a conversation she had had with Plaintiff several

days  earlier  concerning  volunteer  opportunities  for  retired

nurses.[15]  Allison reported that Plaintiff argued with her about

established  county  procedures,  questioned  the  competence  of  the

county  attorney,  opined  that  most  attorneys  were  corrupt  and

incompetent and informed Allison that he had authored two books on

medical liability issues.[16]  According to Allison, Plaintiff's side

of  the  conversation  became  so  intense  that  Allison  voiced  her

intent to terminate the meeting.[17]  At that point, Plaintiff changed

his tone and admitted that it was his plan to "grill [her] in the

pros and cons of the issues and procedures for volunteers" because

he had an idea to discuss with her.[18]  Although Allison stayed to

---

[13]     PMSJ, Ex. 30, e-mail from Plaintiff to Nguyen dated July 15, 2005.

[14]     PMSJ, Ex. 32, e-mail from Nguyen to Plaintiff dated July 15, 2005.

[15]     DMSJ, Ex. B, e-mail from Allison to Cunningham dated July 18, 2005.

[16]     Id.

[17]     Id.

[18]     Id.

hear Plaintiff's idea, she told him that she did not appreciate his treatment of her during the lengthy discussion and that they could have accomplished more had he acted in a more professional manner.[19]

In mid-July 2005, a lab intern at the Humble Clinic misread a positive pregnancy test as negative and, though the mistake was caught at once, Plaintiff proposed retesting all clients whose pregnancy tests had been performed by the intern.  According to Plaintiff, Dr. Shah objected to this and overruled Plaintiff's decision in a telephone call on July 18, 2005.  The next day, Plaintiff complained to Nguyen that he objected to Dr. Shah's angry tone and opined that Dr. Shah's decision was inconsistent with Harris County rules and regulations. Plaintiff informed Nguyen that he intended to formally protest Dr. Shah's decision to Dr. Palacio via the county grievance procedure.[20]  On that same day, Nguyen went to the Humble Clinic to discuss clinic management issues with Plaintiff.  It was agreed that Plaintiff was to discontinue the sign in/sign out sheets, defer the "wait time trials" until he was more familiar with the internal workings of the clinic, drop his proposal for off-site storage rental, and do additional research

---

[19]     Id.

[20]     PMSJ, Ex. 15, e-mail from Plaintiff to Nguyen dated July 19, 2005. Plaintiff attached to his summary judgment evidence a copy of a grievance addressed to Palacio dated July 21, 2005.  See Ex. 16, grievance dated July 21, 2005.  That grievance states, "I would like the opportunity to meet with you to discuss my concerns about gross negligence of patient care at the Humble Clinic. I look forward to hearing from you soon.  Thank you." Defendant denied that Plaintiff ever forwarded this form to either Nguyen or Dr. Palacio directly.

before purchasing music equipment for the clinic.[21] Nguyen informed Plaintiff that Dr. Shah would review the staff performance appraisals.[22]

At some time before August 4, 2005, Dr. Shah met with Plaintiff and cautioned him to "take things slowly."[23] Dr. Shah also counseled Plaintiff to be careful about the things he said to subordinates as well as the manner in which he addressed them. On August 4, 2005, Dr. Shah observed Plaintiff "aggressively questioning" Linda Forys ("Forys"), health education director, about her job duties during a meeting. Dr. Shah and Nguyen both found Plaintiff's manner so hostile towards Forys that they intervened.[24] Dr. Shah told Plaintiff that his manner was inappropriate.[25]

Shortly after the Forys incident, Stephani Adams ("Adams") a Humble Clinic employee, filed a formal grievance against Plaintiff.[26] Adams complained that Plaintiff talked down to her and characterized her most recent encounter with Plaintiff as a "hostile verbal assault."[27]    Adams reported that Plaintiff

---

[21]   PMSJ, Ex. 19, memo from Nguyen to Plaintiff dated Aug. 5, 2005.

[22]   Id.

[23]   DMSJ, Ex. D, Affidavit of Umair Shah, p. 3.

[24]   Id.

[25]   Id.

[26]   DMSJ, Ex. E.

[27]   DMSJ, Ex. E, p. 1.

instructed her to request a transfer because he could not work with her.[28]  Adams also reported that four other female coworkers had approached her to complain about Plaintiff's unprofessional behavior toward them.

On August 10, 2005, Colleen Hodges, public relations coordinator for HCPHES, related to Cunningham that a community outreach program manager sought her assistance to deal with Plaintiff.[29] For years, this manager had run a spay/neuter program periodically in the parking lot of the Humble Clinic.  Plaintiff refused to allow the program until he was provided certain information.[30]  The manager also complained that Plaintiff was very rude to her.  When Hodges called Plaintiff to advise him that this program had been approved for years and was in compliance with all Harris County policies, Plaintiff told her that he did not want to listen and to shut up.[31]  He demanded that Hodges provide the information he had requested.  While Hodges was working on his request, Plaintiff called and told her that he no longer needed the information.[32]  Hodges related to Cunningham that Plaintiff was

---

[28]    Id. at p. 2.

[29]    DMSJ, Ex. F, e-mail from Hodges to Cunningham dated Aug. 10, 2005.

[30]    Id.

[31]    Id.

[32]    Id.

condescending and immovable in their conversation.[33]  She also told
Cunningham that she had never known this particular manager, who
also complained about Plaintiff's tone, to be anything other than
courteous.[34]

On August 15, 2005, Plaintiff sent an e-mail to clinic
managers concerning the Gene Greene Immunization Event, an out-
reach program that offered free immunization to the community.[35]
In the e-mail, he stated, in part, "Thankfully, we tortured 125
kids between 9:00 a.m. and 1:00 p.m.," "Gene Greene's Office kindly
served sandwiches (but no sand witches) to our staff," and "After
appearing in a few funerals, and perhaps, weddings, too, the
Congressman showed up just before the end of the show."[36]  Plaintiff
also copied Nguyen and Dr. Shah with the e-mail. At 5:30 p.m., Dr.
Shah sent an e-mail to Nguyen communicating his displeasure with
the unprofessional tone and content of Plaintiff's e-mail.[37]  Dr.
Shah told Nguyen to discuss his comments with Plaintiff and
expressed his disappointment that Plaintiff had not taken previous
reprimands to heart.[38]

---

[33]   Id.

[34]   Id.

[35]   See PMSJ, p. 36,

[36]   DMSJ, Ex. G, e-mail from Plaintiff dated Aug. 15, 2005.

[37]   DMSJ, Ex. J, e-mail from Dr. Shah to Nguyen dated Aug. 15, 2005, p.
3.

[38]   Id.

By the next morning, Dr. Shah had changed his mind about simply confronting Plaintiff on his behavior.  On August 16, 2005, Dr. Shah informed Nguyen in an e-mail that he had decided to seek Plaintiff's termination.  Shah stated,

> I find his remarks about Congressman Green as immature, discourteous and at the same time disingenuous.  If this were the only instance of an issue with this employee, then I would be willing to work through the progressive disciplinary route with him.  However, this is one of many instances in his short stint here, which has been saddled with a grievance filed against him, numerous complaints from staff, and numerous departures from his clinical staff since his arrival.  His display of unprofessionalism has been viewed by both of us directly as well when we saw how he queried another HCPHES division director just two weeks back.  Equally, I am concerned about what interactions he is having with staff (?public) that we are not even aware of because they go unreported or otherwise are do [sic] not rise to our attention.

Dr. Shah concluded by stating that Plaintiff's behavior was "not tolerable" and that he should be terminated effective immediately. Informed of the situation by Nguyen, Cunningham concurred that Plaintiff should be terminated for his lack of judgment and insensitivity to employees.[39]   Later that morning, Dr. Palacio agreed with Dr. Shah and Cunningham's recommendation to immediately terminate Plaintiff.[40]

On August 17, 2005, Nguyen delivered a letter of termination

---

[39]    DMSJ, Ex. J, e-mail from Cunningham to Shah dated Aug. 16, 2005, p. 5.

[40]    DMSJ, Ex. J, e-mail from Dr. Palacio to Dr. Shah and Cunningham dated Aug. 16, 2005, pp. 1-2.

to Plaintiff at the Humble Clinic.[41]  Plaintiff responded that the County had not heard the last of him, that he would file a lawsuit and that he believed that he was terminated because Dr. Shah did not agree with Plaintiff's push to evaluate the nursing staff and to comply with "the law."[42]

On August 25, 2005, Plaintiff sent an e-mail to County Judge Robert Eckels with a copy to Dr. Palacio, complaining that he was fired from his position for raising concerns over patient care and "other unlawful conduct."[43]  Plaintiff charged that HCPHES had given "unlimited power" to Dr. Shah, "who is capable of concealing his lunacy under some desirable personality traits."[44]  Plaintiff also expressed his hope that by acting quickly, Harris County might minimize the risk posed to numerous patients.[45]  Harris County investigated Plaintiff's charges of discrimination and determined that his allegations were unsubstantiated.[46]

Plaintiff filed this action on April 18, 2006.  Both Plaintiff and Defendants have filed motions for summary judgment.

---

[41]    DMSJ, Ex. K, e-mail from Nguyen to Dr. Shah dated Aug. 17, 2005; see also PMSJ, Ex. 28, termination letter dated Aug. 16, 2005

[42]    DMSJ, Ex. K, e-mail from Nguyen to Dr. Shah dated Aug. 17, 2005.

[43]    DMSJ, Ex. Q, e-mail from Plaintiff to Robert Eckels dated Aug. 25, 2005.

[44]    Id.

[45]    Id.

[46]    DMSJ, Ex. R, e-mail from Joyce Cambric to Dr. Palacio and others dated Oct. 5, 2005, attaching her investigative report.

10

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response

to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S.

at 322.

## III.  Analysis

### a.  Title VII and the THCRA

Plaintiff has brought suit against Defendant Harris County[47] for race/national origin discrimination under both Title VII and the TCHRA.  Claims of discrimination under the TCHRA are evaluated under the same burden shifting analysis as Title VII claims. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 n.2 (5th Cir. 1999); Chevron Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex. 1987).

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a). In an employment discrimination case, a plaintiff may prove a claim either through direct or circumstantial evidence.  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).  In the absence of direct evidence, courts analyze discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In

---

[47]     Only Plaintiff's employer, Harris County, can be held liable under Title VII or the TCHRA.  See Tex. Lab.Code § 21.002(8) (employer defined); Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 686 (5th Cir. 2001) (supervisors not considered "employers" under labor code); Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998)("[O]ur cases make plain that the term employer does not include a hiring or supervisory official in his personal or individual capacity").

The Box, Inc., 376 F.3d 305 (5th Cir. 2004).

Under this "modified McDonnell Douglas approach," a plaintiff must first trigger a presumption of discrimination by establishing a prima facie case. See Rachid, 376 F.3d at 312. Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for its actions. Id. If the defendant satisfies this burden, then the presumption of discrimination dissolves. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid, 376 F.3d at 312 (internal quotation and alteration marks omitted). If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. Rachid, 376 F.3d at 312.

The ultimate burden of persuasion remains with the plaintiff. Reeves, 530 U.S. at 143. At the summary judgment stage, the court looks for "a conflict in substantial evidence to create a jury

14

question regarding discrimination." <u>Haynes v. Pennzoil Co.</u>, 207 F.3d 296, 300 (5th Cir. 2000).  The plaintiff must produce some evidence "demonstrating that discrimination lay at the heart of the employer's decision." <u>Price</u>, 283 F.3d at 720.  Evidence of the falsity of an employer's stated justification may be enough, in some cases, to raise a fact issue on pretext, but only if a reasonable jury could conclude that the action was discriminatory. <u>Reeves</u>, 530 U.S. at 147-48.  "Whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" <u>Price</u>, 283 F.3d at 720 (quoting <u>Reeves</u>, 530 U.S. at 148-49).

Plaintiff can establish a prima facie case of discrimination by demonstrating that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees of a different race or national origin.  See <u>Okoye v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 245 F.3d 507, 512-13 (5th Cir. 2001).  Defendant Harris County contests the fourth prong, arguing that Plaintiff cannot show that he was discharged for conduct for which other, similarly situated employees were not.

In order to raise a fact issue that he was similarly situated with others but treated differently, Plaintiff must show that they engaged in similar conduct.  To establish disparate treatment, the plaintiff must show that the employer treated other employees in nearly identical circumstances in a different manner. Oyoke, 245 F.3d at 514; Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995); Barnes v. Yellow Freight Sys., Inc., 778 F.2d 1096, 1101 (5th Cir. 1986)(holding that a presumption of discriminatory intent is raised for purposes of a disparate treatment claim where "a supervisor of one race treats employees of the same race more favorably than similarly situated employees of another race under circumstances that are essentially identical.").

In support of the similarly situated prong, Plaintiff argues that Harris County had "excessive tolerance for white, black and Hispanic bad behavior"[48] and cites several examples of what he considers disparate treatment.

First, Plaintiff claims that Trejo, a white female, was treated more favorably than he when, in response to Plaintiff's stated desire to terminate Trejo for attendance issues,[49] Cunningham reminded Plaintiff that Harris County had a progressive discipline

---

[48]    PMSJ, p. 26.

[49]    According to Plaintiff, Trejo arrived to work late when she had patients waiting, left early when she had patients waiting, refused to attend mandatory training sessions, complained that she did not have a window office and cheated on her time sheet.  See Plaintiff's Amended Complaint, Docket Entry No. 6, p. 13.

policy to remedy performance issues.[50]   In contrast, Plaintiff argues, he was terminated without resort to progressive discipline.

The Trejo situation does not raise a inference of disparate treatment for several reasons.  Plaintiff was the manager of a clinic supervising a number of employees; Trejo was a nurse practitioner and had different responsibilities and job duties. Also, Plaintiff was terminated by Dr. Palacio based on the recommendation of Dr. Shah after numerous complaints surfaced concerning Plaintiff's unprofessional and condescending treatment of subordinate employees and others who interfaced with him as manager of the Humble Clinic.  In contrast, Trejo's alleged work performance issues related to attendance.  The court concludes that this incident does not raise a prima facie case of disparate treatment because Plaintiff and Trejo were not in nearly identical circumstances.

Plaintiff's other examples of disparate treatment also fail to raise nearly identical fact situations.  For example, Plaintiff claims that Defendant Harris County was slow in disciplining an African-American male for sexual harassment and only terminated him when a complainant threatened to sue.[51]  Presumably, Plaintiff views this as evidence of disparate treatment because Plaintiff was fired after only seven weeks on the job.  There is no similarity between

---

[50]     PMSJ, Ex. 32, e-mail to Plaintiff from Cunningham dated July 15, 2005.

[51]     See Plaintiff's Amended Complaint, Docket Entry No. 6, p. 14-15.

17

Plaintiff and this individual.

Next, Plaintiff complains that when he recommended that a Hispanic female lab technician be terminated for excessive tardiness and unauthorized absenteeism, Dr. Shah rejected that recommendation and falsely claimed that the lab technician already had resigned. This incident does not present nearly identical circumstances as required by Fifth Circuit case law.

Plaintiff complains that Dr. Shah chose to believe the allegations of Adams' grievance and fired Plaintiff before he could respond to the merits of her complaints as allowed by the Defendant's grievance procedure. Even if true, this incident does not raise a fact issue of disparate treatment in Harris County's decision to terminate Plaintiff for several instances of unprofessional conduct.

Plaintiff complains that, in 2007, two white clinic managers received written counseling for disciplinary issues when, in contrast, he was terminated.[52] In both cases cited by Plaintiff, the letters of reprimand were signed by Valeria Brannon, chief of the clinical health and prevention services department.[53] In one case, Brannon took a manager to task for providing information to

---

[52]     PMSJ, p. 29.

[53]     PMSJ, Ex. 40, interoffice memorandum dated May 17, 2007, and memorandum of understanding dated May 23, 2007, both from Valeria Brannon. It is unclear from the record if Brannon held the same position as Nguyen did in 2005 when he was Plaintiff's immediate supervisor. Dr. Shah received copies of both letters.

another HCPHES employee that gave the false impression that Brannon was acting negligently.[54]  In the other case, Brannon counseled the manager that his response to an employee who told him, "I quit," was inappropriate and unauthorized by policy.[55]  The manager was reminded of the county's progressive discipline policy and the need to document all employment matters.[56]  The court finds that these two managers are not similarly situated with Plaintiff as they were disciplined two years after Plaintiff was terminated, by a different supervisor for actions that were not comparable to those of Plaintiff.

Plaintiff's other complaints are that:(1) two other managers, one white and one black, also opposed the transfer of Adams to the HCPHES main office but were not criticized by Dr. Shah;[57] (2) another Asian supervisor, Nguyen, was treated "shabbily and routinely humiliated" by Dr. Shah when Dr. Shah took away Nguyen's "young and beautiful Secretary;"[58] (3) Dr. Shah was hostile to people of his own kind and harassed an Asian female who later quit her job;[59] (4) Dr. Shah became angry when he learned that Plaintiff

---

[54]     Id. at p.1.

[55]     Id. at p. 3. The manager apparently responded that the employee was fired.

[56]     Id.

[57]     PMSJ, p. 29.

[58]     Id.

[59]     Id. at pp. 29-30.

had made grammatical edits to a strategic plan that was sent to Plaintiff in error;[60] and (5) an Asian female of Filipino origin filed a complaint of discrimination against HCPHES.  None of these raise an inference of disparate treatment because they are so factually different from the conduct for which Plaintiff was terminated.[61]

As Plaintiff has failed to allege a prima facie case of discrimination with respect to his termination, the court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** and that Plaintiff's motion for summary Judgment be **DENIED** on Plaintiff's Title VII and TCHRA claims.

### b.  Title VI

Here, Plaintiff complains that Defendant Harris County violated Title VI by "disparately treating Plaintiff during his employment and unlawfully terminating his employment on the basis of his race."[62]   In support of his Title VI claim, Plaintiff incorporated by reference his factual allegations supporting his Title VII claim, adding that part of his salary was paid by federal funds.[63]

To prevail under Title VI on a claim for monetary relief, a

---

[60]     Id. at p. 30.

[61]     Id. at p. 31.

[62]     Plaintiff's Amended Complaint, Docket Entry No. 6, pp. 31-32.

[63]     Id. at ¶¶ 172, 173.

20

private litigant must prove: 1) that the defendant engaged in intentional discrimination based on race, color, or national origin; and 2) the defendant received federal financial assistance.[64]  42 U.S.C. § 2000d; see also Guardians Ass'n v. Civ. Serv. Comm'n of New York City, 463 U.S. 582 (1983); Alexander v. Sandoval, 532 U.S. 275, 280 (2001).  Intentional discrimination encompasses practices by which the actor intended to treat similarly situated persons differently solely on the basis of national origin or race.  Canutillo Ind. Sch. Dist. v. Leija, 101 F.3d 393, 397 (5th Cir. 1996).

Defendants moved for summary judgment on this claim on the basis that none of Plaintiff's salary was reimbursed by federal funds.  In support, Defendants attached the affidavit of Henry Pastor, who averred that Plaintiff's salary was paid by the State of Texas through Regional Grant ECF2759A.[65]  Plaintiff failed to contest Defendants' summary judgment evidence in any responsive pleading or discuss this claim in his motion for summary judgment. Accordingly, it appears that Plaintiff has abandoned his Title VI claim.  Even if Plaintiff has not abandoned this claim, in light of the court's recommended finding with respect to his Title VII claim

---

[64]    The text of the statute reads:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[65]    DMSJ, Ex. T, Affidavit of Henry Pastor, p. 2.

that Plaintiff failed to adequately allege intentional discrimination, that is, a similarly situated non-Asian individual who was treated more favorably based on his race or national origin, his Title VI claim must also fail. It is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** on Plaintiff's Title VI claim.

    c.  <u>42 U.S.C. § 1985(3)</u>

Section 1985(3) provides in pertinent part:

> If two or more persons in any State . . . conspire . . .
> for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal
> protection of the laws, or of equal privileges and
> immunities under the laws. . . the party so injured or
> deprived may have an action for the recovery of damages
> occasioned by such injury or deprivation, against any one
> or more of the conspirators.

In bringing a claim under Section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States. <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 103 (1971).

In the present case, Plaintiff alleges that the object of the conspiracy was to terminate his employment because of his national origin or race, thereby depriving him of his rights to the equal

protection of the laws.[66]   In essence, Plaintiff has restated his Title VII claim as a conspiracy to terminate his employment because of his national origin or race.   However, this theory of recovery is precluded by <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 378 (1979).   There, the Supreme Court found that "[Section] 1985(3) may not be invoked to redress violations of Title VII."   <u>Id.</u>   As Plaintiff has not stated a Section 1985(3) claim factually distinct from his Title VII claim, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED** on this cause of action.

### d.   <u>42 U.S.C. § 1983</u>

Section 1983 provides a civil remedy for violations, under color of state law, of a person's constitutionally recognized rights, privileges, or immunities.   <u>Bledsoe v. City of Horn Lake, Mississippi</u>, 449 F.3d 650, 653 (5th Cir. 2006).   Plaintiff alleges that he was terminated in violation of the due process clause of the Fourteenth Amendment and that his termination violated a liberty interest in his reputation also protected by the Fourteenth Amendment.   In addition, he claims that his termination was in retaliation for his exercise of his First Amendment rights.

A plaintiff can establish a prima facie case under Section

---

[66]   PMSJ, pp. 40-42.

1983[67] by alleging: 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law. <u>Doe v. Rains County Indep. Sch. Dist.</u>, 66 F.3d 1402, 1406 (5th Cir. 1995). The statute creates no substantive right, but only provides remedies for deprivations of rights created under federal law. <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

### 1. Property Interest

In the present case, Plaintiff alleges that he had a property interest in his continued employment and that Defendant violated the Fourteenth Amendment when it discharged him without due process of law.[68] The threshold question under a Section 1983 due process claim is whether the complainant has been deprived of a cognizable property interest in his employment. <u>Bolton v. City of Dallas, Texas</u>, 472 F.3d 261 (5th Cir. 2006). The Fifth Circuit has held that such property right must be established by state law. <u>Hudson v. Texas Racing Comm'n</u>, 455 F.3d 597, 599 (5th Cir. 2006).

A property interest in continued employment is not generally

---

[67]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

[68]    PMSJ, p. 44.

a characteristic of public employment and must be based on an independent source, such as a contract, a state law or a city ordinance. <u>Perry v. Sindermann</u>, 408 U.S. 593, 601 (1972); <u>Bishop v. Wood</u>, 426 U.S. 341, 344 (1976).

The personnel regulations of Harris County clearly state that county employees have "no employment tenure," that "employment is at-will," and that either the County or the employee is "free to terminate employment with or without notice at any time for any reason."[69]  As an at-will employee, Plaintiff had no property interest in his continued employment and therefore had no procedural or substantive due process protection attached to his termination.

Ignoring the personnel regulations, Plaintiff claims that he had a property interest in his continued employment based on the Texas Government Code, Chapter 160, "Grievance Procedure for County Employees," which requires Texas counties to promulgate employee grievance procedures.  Plaintiff argues that Defendant Harris County violated Texas Government Code § 160.005[70] when it terminated

---

[69]   DMSJ, Ex. N, Personnel Regulations, p. 4.

[70]   Section 160.005 of the Texas Government Code provides:

(a) The commissioners court of the county shall enact orders to provide for:

(1) filing of written grievances;
(2) written responses to the grievance allegations;
(3) procedures for appeal to an appointed county grievance resolutions committee;
(4) further appeal to the commissioners court;
(5) presentation of grievances by an employee's

25

his employment before his written response was due on the grievance Adams filed against him.   Plaintiff also claims that his termination was in retaliation for a grievance he filed, thus violating the anti-reprisal section of the same chapter.[71]

Plaintiff's property interest argument is misplaced.   The Texas Government Code sections cited by Plaintiff do not create a right of continued employment necessary to establish a property interest, rather, they merely require a county to have a procedure by which an employee may complain about disputes that arise during employment with the county and protect an employee from reprisal if he exercises his ability to complain.   Those Government Code sections do not create an expectation of continued employment or require that a county show just cause for dismissal of an

---

requested representative;
(6) reasonable leave with pay for the presentation of grievances; and
(7) other necessary procedures to permit effective implementation of this chapter.

(b) The orders and procedures shall apply equally to all employees of the county, including employees of independent elected officials, and shall provide for reasonable timetables for filing and responding to grievances.

[71]   Section 160.006(a) of the Texas Government Code provides in part:

An employee may not be subject to retaliation, reprisal, or discrimination on account of having exercised any right or participated in any procedure established by this chapter.   A supervisor or management official may not be subject to retaliation, reprisal or discrmination because of any grievance adjustment offered under this chapter to an employee with a grievance or because of testifying on any employee's behalf during a grievance procedure under this chapter.

employee.[72]   Even if Plaintiff is correct that Defendant Harris
County violated either Section 160.005 or Section 160.006 of the
Texas Government Code, such a state law violation is not
redressable via Section 1983.

It is therefore **RECOMMENDED** that Defendants' Motion for
Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary
Judgment be **DENIED** on Plaintiff's due process claim.

### 2.  Liberty Interest

Plaintiff has alleged that Defendant Harris County violated a
constitutionally protected liberty interest when it terminated him
for a lack of professionalism and insensitivity in his dealings
with other HCPHES personnel.[73]   Generally, damage to reputation
attendant to a termination from employment does not rise to the
level of a constitutional injury.  Paul v. Davis, 424 U.S. 693, 701
(1976).   "A constitutionally protected liberty interest is
implicated only if an employee is discharged in a manner that
created a false and defamatory impression about him and thus
stigmatizes him and forecloses him from other employment
opportunities."  Perez v. Hous. Auth. of the City of Uvalde, 95
Fed. App'x 51, **4 (5th Cir. 2004), quoting White v. Thomas, 660

---

[72]    See Gilbert v. Homar, 520 U.S. 924, 928-29 (1997)(stating that
"employees who can be discharged only for cause have a constitutionally protected
property interest in their tenure and cannot be fired without due process.")
Plaintiff fails to point the court to any language that required the county to
possess just cause for his termination.

[73]    DMSJ, Ex. A, letter to Plaintiff dated August 16, 2005.

F.2d 680, 684 (5th Cir. 1981).

In order to prevail on this claim, Plaintiff must prove: (1) he was discharged; (2) stigmatizing charges were made against him in connection to the discharge; (3) such charges were false; (4) he was not given notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer refused the request for a hearing.  Hughes v. City of Garland, 204 F.3d 223, 226 (5th Cir. 2000).

In the present case, Plaintiff has failed to bring forward evidence that the charges were made public.  The summary judgment evidence established that Plaintiff's supervisor delivered the letter of termination directly to Plaintiff in private and that Plaintiff left the Humble Clinic shortly thereafter.[74]  There is no evidence that the letter of termination or the reasons for the termination were made public.[75]  Without evidence that stigmatizing charges were made public, Plaintiff's liberty interest claim fails. See Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989).

In addition, the reasons given for Plaintiff's termination do not rise to the level of stigmatizing, which requires more than

---

[74]     DMSJ, Ex. K, e-mail from Nguyen to Shah dated Aug. 17, 2005.

[75]     At his deposition, Plaintiff admitted that he had no information suggesting that Harris County contacted any prospective employer or that any prospective employer contacted Harris County about the reason for his termination.  DMSJ, Ex. M, Plaintiff's Deposition, p. 221.

mere proof that a termination might make a plaintiff less desirable to prospective employers.  <u>Wells v. Hico Indep. Sch. Dist.</u>, 736 F.2d 243, 256 (5th Cir. 1984).  In <u>Wells</u>, the court stated that "for a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to 'a badge of infamy,' public scorn or the like."  <u>Wells</u>, 736 F.2d at 256 n. 16 (citations and internal quotations omitted).

The letter of termination addressed to Plaintiff stated:

This letter is to inform you that you are hereby terminated from the Humble Community Health Center Manager position with HCPHES effective immediately.

You have displayed a lack of professionalism and courtesy in your emails as well as in direct interactions with your immediate staff and other HCPHES personnel.  Your manner has been insensitive, discourteous and, at the same time disingenuous.  In your short stint at the Humble Health Center, there has been a grievance filed against you and numerous complaints from HCPHES staff about the manner in which you dealt with them.  Your peers and your supervisors have all been dismayed at the display of unprofessionalism that you have exhibited.

Please contact Human Resources office if you have any questions about your final check or benefits.

This letter, which did no more than accuse Plaintiff of a lack of courtesy and professionalism, did not create a defamatory impression of him or subject him to public scorn.  As such, even if published, the letter does not raise a fact issue that it would have foreclosed Plaintiff from other employment opportunities.

Alternatively, a plaintiff's failure to request a name-clearing hearing defeats a liberty interest claim.  <u>Bledsoe</u>, 449

29

F.3d at 653.[76]

In light of Plaintiff's lack of evidence that the letter was published, or stigmatizing, or that he requested and was denied a name-clearing hearing, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED** on Plaintiff's liberty interest claim.

### 3.  First Amendment

Plaintiff claims that he was terminated in retaliation for exercise of his First Amendment rights after complaining of certain conditions at the Humble Clinic.  In order to prevail on a First Amendment retaliation claim, Plaintiff must prove: (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighed the defendant's interest in promoting efficiency and (4) the speech motivated the defendant's actions.  Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 366 (5th Cir. 2000) citing Teague v. City of Flower Mound, Texas, 179 F.3d 377, 380 (5th Cir. 1999).  Recently, in Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951, 1960 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First

---

[76]     In fact, following his termination, Plaintiff requested to appear before Commissioner's Court.  That request was granted, but Plaintiff failed to appear.  DMSJ, Ex. H, Affidavit of Hermina Palacio, p. 3; Ex. I, Affidavit of Charlie Cunningham, p. 2.  Clearly, Plaintiff was aware of this opportunity to demand a name-clearing hearing but failed to take advantage of it.

Amendment purposes, and the Constitution does not insulate their communications from employer discipline."

Defendants argue that Plaintiff's speech was made in the context of his official duties and is therefore not actionable under the First Amendment.  The court agrees.  Here, Plaintiff identifies as protected speech his proposed management reforms for the clinic that were rejected by Nguyen and Dr. Shah.  The reforms included Plaintiff's attempt to institute a sign-in/sign-out sheet for employees and his proposal to have "time trials" at the clinic to decrease waiting time.[77]  Plaintiff also proposed moving certain records into a leased storage facility and purchasing a music system for the clinic waiting room.[78]  When Plaintiff's supervisor reviewed these proposals and required Plaintiff to discontinue them, at least temporarily, Plaintiff claims he filed a grievance with Dr. Palacio, complaining that by not implementing the proposals, patient care would suffer.  Plaintiff claims that this is his protected speech.

At his deposition, Plaintiff admitted that these proposed reforms were part of his official employment duties and that his criticism of HCPHES supervisors arose out of his employment as a

---

[77]     DMSJ, Ex. L, memorandum from Nguyen to Plaintiff dated August 5, 2005, p. 2.

[78]     Plaintiff mandated that performance appraisals be completed on clinic staff; this reform was accomplished.  Presumably then, this item was not included in Plaintiff's grievance.

clinic manager.[79]

There being no contested issue of fact concerning the content or the context of Plaintiff's statements, the court concludes that Plaintiff's speech is not protected by the First Amendment as a matter of law.[80]   Accordingly, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment on this claim be **DENIED** on Plaintiff's First Amendment Claim.

### e. State Law Claims

Because the court recommends dismissal of Plaintiff's federal claims against Defendants, the court also recommends that it decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for breach of contract, defamation and tortious interference with employment relations.   See 28 U.S.C. § 1367(c)(3); Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2000).

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's

---

[79]     DMSJ, Ex. M, Plaintiff's Deposition, pp. 219-21.

[80]     Plaintiff's testimony also negated the fourth prong of the Kennedy test, that is, evidence of a causal connection between the speech and the retaliatory act.  At his deposition, Plaintiff related that he sent his grievance addressed to Dr. Palacio to Nguyen, but Nguyen never acknowledged receiving it. Plaintiff stated that he believed it probable that neither Nguyen nor Dr. Palacio received his grievance and speculated that it was diverted by one of Dr. Shah's spies. See Defendants' Response to Plaintiff's Reply, Docket Entry No. 79, Ex. Y, Plaintiff's Deposition, p. 155.  Without proof that a deciding official was aware of the speech, Plaintiff's claim for retaliation in violation of his First Amendment rights fails on this alternative ground.

motion for summary judgment be **GRANTED** and the Plaintiff's Motion for Summary Judgment be **DENIED** on Plaintiff's federal causes of action.   It is further **RECOMMENDED** that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, electronically or by mail to P.O. Box 61010, Houston, Texas, 77208.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 27th day of November 2007.

Nancy K. Johnson
United States Magistrate Judge